IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SARAH MONTGOMERY,

               Plaintiff,

    v.

WELLS FARGO BANK, NAT'L ASS'N, et al.

               Defendants.

NO. C12-3895 TEH

ORDER DENYING MOTION TO DISMISS

      This matter comes before the Court on Defendant Wells Fargo's motion, filed on September 19, 2012, which requests the dismissal of Plaintiff Sarah Montgomery's complaint in its entirety for failure to state a claim upon which relief may be granted. After carefully reviewing the parties' written arguments, the Court concludes that oral argument is unnecessary. For the reasons set forth below, the Court DENIES Wells Fargo's motion.

**BACKGROUND**

      In this suit, Montgomery seeks redress under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and California law for Defendant Wells Fargo's allegedly inaccurate or incomplete reporting of a debt that was discharged in bankruptcy.

      On March 8, 2010, Montgomery filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California. In a schedule accompanying her bankruptcy petition, Montgomery listed an unsecured debt of $8,718.00 in favor of Wells Fargo. (Compl. at ¶ 13.) The bankruptcy court granted Montgomery's petition on June 2, 2010, discharging all of her dischargable debts, including

her debt to Wells Fargo. (Compl. at ¶ 14.)[1] Wells Fargo received electronic notice of the discharge on June 5, 2010. (Compl. at ¶ 15.)

Montgomery alleges that, on April 30, 2011 – almost a year after her bankruptcy petition was granted – she sent a written notice to the credit reporting agency Equifax in which she informed Equifax that her debt to Wells Fargo had been discharged. (Compl. at ¶¶ 10, 15.) In her written notice, Montgomery disputed Wells Fargo's continued reporting to Equifax that her account had been "charged off" and was in "collection." (Compl. at ¶¶ 10, 15.) Equifax then notified Wells Fargo that Montgomery disputed the accuracy of its reporting. (Compl. at ¶¶ 10, 23.)

Montgomery further alleges that, had Wells Fargo reasonably investigated her dispute of the "charged off" notation, it would have found two notices that had been sent to it from the bankruptcy noticing center that stated that Montgomery's debt had been discharged in bankruptcy. (Compl. at ¶ 24.) Having failed to reasonably investigate her dispute, Wells Fargo reported back to Equifax that Montgomery's account was "open" and had been "charged off." (Compl. at ¶ 24.)

On May 31, 2011, Montgomery received from Equifax a copy of her credit report on which her Wells Fargo account was listed as "charged off." (Compl. at ¶ 16.) According to Montgomery, Wells Fargo continues to refuse to correct its reporting. (Compl. at ¶ 17.)

Montgomery initiated the present action by filing her complaint in the Alameda County Superior Court on July 2, 2012. Wells Fargo removed the case to federal court on July 25, 2012, and on September 19, 2012, filed the motion to dismiss that is presently under consideration.

---

[1] Wells Fargo has requested that the Court take judicial notice of Montgomery's bankruptcy petition and bankruptcy discharge pursuant to Rule 201 of the Federal Rules of Evidence. (Doc. No. 15.) Montgomery does not oppose this request and the Court finds that the existence of these filings is a proper subject of judicial notice. *See Duke Energy Trading and Marketing, LLC v. Davis*, 267 F.3d 1042, 1048 n. 3 (9th Cir. 2001) (granting judicial notice of related bankruptcy court filings). The Court therefore GRANTS Wells Fargo's request.

**LEGAL STANDARD**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a its allegations fail "to state a claim upon which relief can be granted."

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, to be entitled to Rule 12(b)(6)'s presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Additionally, because a complaint must "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

**DISCUSSION**

Wells Fargo's motion to dismiss Montgomery's complaint primarily is based on its contention that reporting Montgomery's debt as "charged off" is accurate, and therefore does not run afoul of the FCRA or California law. Alternatively, Wells Fargo argues that Montgomery fails to plead adequately two of the remaining elements of her claims, namely that Wells Fargo received notice of her dispute of the "charged off" notation, and that she sustained actual damages.

**A.  Accuracy**

Congress enacted the FCRA in 1970 in order to facilitate "fair and accurate credit reporting" by ensuring that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. §

3

1681(a)(1) & (4). Initially, the FCRA did not impose any duties on "furnishers" – individuals and entities such as "credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies" that provide information relating to consumer creditworthiness to consumer reporting agencies. H.R. Rep. No. 108-263, at 24 (2003). Provisions imposing duties on furnishers were added in 1996 based on the determination that "bringing furnishers of information under the provisions of the FCRA is an essential step in ensuring the accuracy of consumer report information." S. Rep. No. 104-105, at 49; Consumer Credit Reporting Reform Act of 1996, Pub. L. 104-208, ch. 1., sec. 2413, § 623 (codified as amended at 15 U.S.C. § 1681s-2). The amendment was intended to close a "gap in the FCRA's coverage" under which a consumer had no recourse against a furnisher that "act[ed] irresponsibly in verifying the information" disputed by the consumer. S. Rep. No. 103-209, at 6 (1993). Wells Fargo is a furnisher of information, subject to the provisions added to the FCRA in 1996.

Under these provisions, whenever a furnisher receives notice from a consumer reporting agency that a consumer disputes the completeness or accuracy of an item of information provided to the agency by the furnisher, the furnisher must "conduct an investigation with respect to the disputed information" and "report the results of the investigation to the consumer reporting agency." 15 U.S.C.A. § 1681s-2(b)(1)(A) & (C). If a furnisher determines, upon investigation, that information it previously provided to a consumer reporting agency is incomplete or inaccurate, the furnisher must report this determination to the consumer reporting agency. 15 U.S.C.A. § 1681s-2(b)(1)(C). A private right of action is available to consumers seeking to enforce these duties. *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002).

Montgomery's complaint sets out three closely related claims, brought under the FCRA's furnisher provisions, discussed above, and California's Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, *et seq.* ("CCRAA"), and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"). The CCRAA's furnisher provision mandates, in pertinent part, that "[a] person shall not furnish information on a specific

4

1 transaction or experience to any consumer credit reporting agency if the person knows or
2 should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).
3 Sections 1785.25(g) and 1785.31(a) of the California Civil Code provide for private rights of
4 action to enforce § 1785.25(a), quoted above. A third mechanism for enforcing the CCRAA
5 against a furnisher is found in the UCL. The UCL "does not impose any duties" on
6 furnishers; in this context, it "is merely another vehicle for enforcing section 1725.25(a)."
7 *Mortimer v. J.P. Morgan Chase Bank*, 2012 WL 3155563, at *6 (N.D. Cal. Aug. 2, 2012);
8 *see also Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (Cal. 1992) (noting that the
9 UCL "borrows" violations of other laws).

10     Because the CCRAA's requirements of completeness and accuracy mirror those found
11 in the FCRA, judicial interpretations of the federal provisions are "persuasive authority and
12 entitled to substantial weight when interpreting the California provisions." *Carvalho v.*
13 *Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (internal quotation marks and
14 citation omitted). This element of Montgomery's claims under the CCRAA and UCL
15 therefore will not be considered separately from the parallel element in her FCRA claim.

16     The dispute in the present case centers around the significance of the term "charge
17 off." The FCRA permits credit reporting agencies to retain a notation in an individual's
18 credit report that a debt has been "charged to profit and loss" – in other words, charged off –
19 for seven years. 15 U.S.C. § 1681c(a)(4). Black's Law Dictionary, defines "charge off" as
20 "to treat (an account receivable) as a loss or expense because payment is unlikely; to treat as
21 a bad debt." *Black's Law Dictionary* 266 (9th Ed. 2009). "Bad debt," in turn, is defined as
22 "[a] debt that is uncollectible and that may be deductible for tax purposes." *Id*. at 462.

23     Wells Fargo argues that its reporting of Montgomery's discharged debt as charged off
24 is accurate because Wells Fargo treats the account as bad debt. Montgomery contends that
25 Wells Fargo's reporting is inaccurate because the "charged off" notation suggests that the
26 debt is legally, if not practically, collectable. In support of her position, Montgomery cites to
27 a Federal Trade Commission staff opinion letter which states that:
28

5

> In our view, it is not a reasonable procedure to label an account that has been discharged in bankruptcy as "charged off as bad debt" if the account was open and not charged off when the consumer filed bankruptcy. Such a designation would be inaccurate or misleading, because it would indicate that the creditor had written off the account at the time of bankruptcy when it had not in fact done so.

Letter from Clarke W. Brinkerhoff, Federal Trade Comm'n, to Michael Lovern, Sr., Trial Mngmnt. Assocs. (April 24, 1998).[2] Wells Fargo concedes that reporting as charged off an account that was open and not charged off at the time the consumer filed for bankruptcy, "would be not only inaccurate, but false." (Doc. No. 16 at 2.) The parties therefore agree that if a consumer has an account that is open and has not been charged off at the time the consumer files for bankruptcy, it is inaccurate to report the debt associated with that account as charged off after it is discharged.

In support of its contention that its reporting of Montgomery's debt as charged off is accurate, Wells Fargo cites to a second FTC staff opinion letter, which states that "nothing in the FCRA . . . prohibits a creditor from reporting to a [consumer reporting agency] that an account which has been discharged in bankruptcy has also been charged off so long as the credit grantor has in fact charged off the account." Letter from Clarke W. Brinkerhoff, Federal Trade Comm'n, to Peter L. McCorkell, Fair, Isaac and Co., Inc. (June 3, 1999). In essence, Wells Fargo seems to contend that it charged off Montgomery's account before she filed for bankruptcy and that its reporting of her debt as charged off is therefore accurate.

Wells Fargo's argument is problematic in two respects. The first is that Wells Fargo reads too much into Montgomery's complaint: Montgomery does not allege that Wells Fargo ever actually charged off her debt. She alleges only that Wells Fargo reported to Equifax that Montgomery's debt was charged off after the debt had been discharged in bankruptcy.

---

[2] Montgomery argues that this interpretation is entitled to *Chevron* deference. She is incorrect. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference.") Nevertheless, Courts interpreting the FCRA frequently look to staff opinion letters for guidance, and follow that guidance to the extent they find it helpful. *See*, *e.g.*, *Hasburn v. County of Los Angeles*, 323 F.3d 801, 805 n. 6 (9th Cir. 2003); *Levine v. World Financial Network Nat'l Bank*, 437 F.3d 1118, 1122 (11th Cir. 2006); *Morris v. Equifax Info. Servs.*, 457 F.3d 460, 470 n. 16 (5th Cir. 2006).

1  Viewing this allegation in the light most favorable to Montgomery, a plausible inference may
2  be drawn that Montgomery's Wells Fargo account was open and not charged off at the time
3  she filed for bankruptcy. Wells Fargo has conceded that under those circumstances, its
4  reporting would be inaccurate. Drawing permissible inferences in Montgomery's favor, her
5  complaint sufficiently alleges inaccuracy.

6  The second problem with Wells Fargo's argument is that the FCRA and the CCRAA
7  require that furnishers' reports to consumer reporting agencies be complete, as well as
8  accurate, and Montgomery does not allege that Wells Fargo ever reported to Equifax that her
9  account was discharged in bankruptcy. 15 U.S.C.A. § 1681s-2(b)(1); Cal.Civ. Code §
10 1785.25(a). The Ninth Circuit considered a parallel issue in *Gorman v. Wolpoff &
11 Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009). In *Gorman*, the court concluded that a
12 furnisher that had accurately reported an account as "delinquent" could nevertheless be held
13 liable under the FCRA for failing to report that the consumer disputed the debt. *Id.* at 1162-
14 64. The Court held that a claim under § 1681s-2(b)(1)(D) need not be supported by evidence
15 that the report is "patently incorrect" if the report is "misleading in such a way and to such an
16 extent that it can be expected to adversely affect credit decisions." *Id*. at 1163 (internal
17 quotation marks and citation omitted). The Court reasoned that "[i]t is the failure to report a
18 *bona fide* dispute, a dispute that could materially alter how the reported debt is understood,
19 that gives rise to a furnisher's liability under § 1681s-2(b)." *Id*.

20 In the context of the present case, Wells Fargo's failure to report that Montgomery's
21 debt had been discharged in bankruptcy – separate and apart from the whether the account
22 was charged off – could materially alter how the debt was understood. A bankruptcy
23 discharge relieves the consumer of any legal obligation to repay the discharged debt, *see* 11
24 U.S.C. § 727(b), whereas a consumer may be liable to repay a debt that has been charged
25 off.[3] Even if Wells Fargo's reporting of Montgomery's debt as "charged off" was technically

---

[3] Wells Fargo argues that – to the extent that Montgomery contends that the
27 inaccurate reporting of her account as charged off constitutes an attempt to collect in
   violation of the discharge injunction – Montgomery's claims are precluded by the
28 Bankruptcy Code. But Montgomery does not so contend, and the Court therefore need not

7

accurate, it might still be misleading or incomplete. *Cf. Cisneros v. U.D. Registry, Inc.*, 39 Cal. App.4th 548, 579 (Cal. Ct. App. 1995) (concluding that a consumer reporting agency has not ensured the "maximum possible accuracy" of information when the information "is misleading or incomplete, even if it is technically accurate.")[4] Montgomery alleges that even after completing its investigation, Wells Fargo refused to correct its reporting of her debt. Drawing reasonable inferences in Montgomery's favor, her complaint states a claim that Wells Fargo breached its duty to report to Equifax that the information it had previously provided about Montgomery's debt – its report that her account had been "charged off" – was incomplete because it had failed to report that Montgomery's debt had been discharged in bankruptcy. *See* 15 U.S.C. § 1681s-2(b)(1)(D); Cal. Civ. Code § 1785.25(a); *Gorman*, 584 F.3d at 1163.

**B. Notice**

Wells Fargo also contends that Montgomery has insufficiently pled that it received notice from Equifax that she disputed the completeness or accuracy of the "charged off" notation. A consumer reporting agency is required under 15 U.S.C. § 1681i(a)(2) to provide notice of a dispute to the furnisher of the disputed information within five business days of receiving notice of the dispute from a consumer. A furnisher's duties under § 1681s-2(b) "arise only after the furnisher receives notice of the dispute from the [consumer reporting agency]." *Gorman*, 584 F.3d at 1162. If Wells Fargo did not receive notice from Equifax, it

---

reach this argument.
  Wells Fargo would be unlikely to succeed with this argument even if the Court were to consider it. Disputes regarding the completeness and accuracy of credit reports do not involve inquiries into whether the underlying debt may be collected; rather, they involve inquiries about how the debt has been reported. For this reason, Courts have held that such claims are not precluded by the Bankruptcy Code. *See In re Miller,* No. 01-2004, 2003 WL 25273851, at *2 (Bankr. D. Idaho Aug. 5, 2003) ("[T]here appears to be no conflict in remedies between the FCRA and the Bankruptcy Code."); *King v. Bank of America*, No. 12-4168, 2012 WL 4685993, at *9 (N.D. Cal. Oct. 1, 2012) (collecting cases).

[4] The June 3, 1999 FTC staff opinion letter upon which Wells Fargo relies does not contradict this conclusion. The letter states that the FCRA does not prohibit a furnisher from truthfully reporting that "an account that has been discharged in bankruptcy has also been charged off," but the letter does not state that it is permissible for the furnisher to report only that the debt was charged off, while failing to report that it was discharged in bankruptcy.

8

had no duty to investigate the completeness and accuracy of its reporting related to Montgomery's account; therefore, if Montgomery has insufficiently pled notice, she has failed to state a claim.

As set out above, Montgomery alleges that: (1) on April 30, 2011, she sent written notice to Equifax that she disputed the "charged off" notation; (2) Equifax notified Wells Fargo of the dispute; (3) Wells Fargo verified that it received notice from Equifax; (4) Wells Fargo reported back to Equifax that Montgomery's account had been "charged off"; (5) on April 31, 2011, Montgomery received from Equifax a copy of her credit report on which her Wells Fargo account was listed as "charged off"; and (6) Wells Fargo thereafter continued to refuse to correct its reporting. These allegations are sufficiently detailed to enable Wells Fargo to defend itself. *See Wang v. Asset Acceptance, LLC*, No. 09-4797, 2010 WL 2985503, at *5 (N.D. Cal. July 27, 2010) (rejecting argument that plaintiff must plead that furnisher received notice with greater particularity on ground that the defendant failed to "explain how Wang or similarly situated individuals would have access to those 'facts' without formal discovery"). Having received Montgomery's written notification that she disputed the "charged off" notation, Equifax was required by law to notify Wells Fargo of the dispute. *See* 15 U.S.C. § 1681i(a)(2). In light of this requirement, Montgomery's allegation that Equifax notified Wells Fargo that she disputed its reporting of her account as "charged off" is inherently plausible. Montgomery has adequately alleged that Wells Fargo received notice of her dispute.

**C. Damages**

Finally, Wells Fargo contends that Montgomery's complaint should be dismissed because her factual allegations do not support a claim for actual damages. The FCRA provides for "actual damages sustained by the consumer" based on negligent failure to comply with its provisions. 15 U.S.C. § 1681o. California Civil Code § 1785.31(a) likewise provides for "actual damages, including court costs, loss of wages, attorney's fees and, when applicable, pain and suffering" in the case of a negligent violation of the CCRAA, and the UCL provides for injunctive relief and restitution upon a showing of actual damages. Cal.

9

Bus. & Prof. Code §§ 17203-04; *see also Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 852-55 (Cal. Ct. App. 2008) (as modified Jan, 28, 2008).

Montgomery alleges that as a result of Wells Fargo's inaccurate reporting of her account as "charged off," she has suffered actual damages stemming from reviewing credit reports, expenses related to travel to and from her attorney's office and sending demand letters, ongoing impairment of her credit score, difficulties in seeking credit and necessary products and services, and pain and suffering. (Compl. ¶¶ 27, 28.) As an initial matter, both the FCRA and the CCRAA permit recovery for "pain and suffering" resulting from inaccurate or incomplete credit reporting. Cal. Civ. Code § 1785.31(a); *Guimond v. TransUnion Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (rejecting argument that plaintiff must show denial of credit to recover under FCRA and holding that humiliation and emotional distress constitute actual damages). Additionally, construed in the light most favorable to Montgomery, her allegation that Wells Fargo's incomplete or inaccurate reporting resulted in difficulties in accessing credit and necessary products and services is sufficient to state a claim for actual damages. *See King v. Bank of America*, No. 12-4168, 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012).

Furthermore, it is not necessary that a plaintiff allege actual damages in order to state a claim for relief under the FCRA. *See Guimond,* 45 F.3d at 1334.[5] In addition to actual damages, Montgomery seeks statutory and punitive damages, declaratory and injunctive relief, and attorney's fees and costs. (Compl. at pp. 7-8.) If a consumer can show willfulness, the FCRA provides for punitive damages and statutory damages of "not less than $100 and not more than $1000" and attorney's fees and costs. 15 U.S.C. § 1681n. These categories of damages are available regardless of whether a plaintiff can show actual damages. *See Ashby v. Farmer's Ins. Co.*, 592 F. Supp. 2d 1307, 1317 (D.Or. 2008) (observing that "under FCRA, statutory damages are awarded as an alternative to actual damages"); *Bakker v. McKinnon*,

---

[5] A showing of actual damages may, however, be required to state a claim under the CCRAA or the UCL. *See Trujillo v. First American Registry, Inc.*, 157 Cal. App. 4th 628, 635-40 (Cal. Ct. App. 2007).

10

152 F.3d 1007, 1013 (8th Cir. 1998) (holding that "actual damages are not a statutory prerequisite" to a claim for punitive damages under the FCRA) (internal quotation marks and citation omitted). Wells Fargo does not challenge Montgomery's allegation of willfulness, and the Court finds that Montgomery's complaint adequately alleges claims for statutory and punitive damages under the FCRA.

**CONCLUSION**

For the reasons stated above, Wells Fargo's motion to dismiss Montgomery's complaint is hereby DENIED.

**IT IS SO ORDERED.**

Dated: November 13, 2012

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

11